712 So.2d 1066 (1998)
In re The SUCCESSION OF Therese Delaune STECKLER.
No. 97-CA-1243.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 1998.
*1068 Dan A. Smetherman, New Orleans, for Appellant Donaldson L. Steckler.
Edward D. Wegmann, Laura Leigh Blackston, New Orleans, for Appellee Julian P. Brignac, Testamentary Executor for The Succession of Therese D. Steckler.
Before DUFRESNE, CANNELLA and DALEY, JJ.
CANNELLA, Judge.
Plaintiff, Donaldson L. Steckler, appeals from the district court judgment awarding him a total of $41,283 on his claim as a creditor in his mother's succession. For the reasons which follow, we affirm.
Plaintiff's father, Lester R. Steckler, died intestate in 1971. He had been married to Therese Delaune Steckler (Mrs. Steckler) and they had one child of the marriage, plaintiff. Therefore, plaintiff inherited his father's share of the community property subject to the usufruct of his mother. Mrs. Steckler died some twenty years later, on April 17, 1991. She had executed a last will and testament in which she sought to disinherit plaintiff for failure to communicate with her for a period of over two years prior to the execution of her will. The will further provided that if the disinhersion provision of the will was not effective, then plaintiff's forced portion was to be held in trust. Except for a few special bequests, she left the remainder of her estate in trust to plaintiff's children, her grandchildren. Julian P. Brignac (Mr. Brignac) was named as the testamentary executor of Mrs. Steckler's estate.
On April 29, 1991, Mr. Brignac filed a petition for probate of the will and confirmation as testamentary executor. Plaintiff filed his first petition in this matter on July 9, 1991, seeking to have the will declared null for lack of testamentary capacity. Plaintiff thereafter filed five supplemental and amending petitions and the "Petition" involved in this appeal, filed April 16, 1992, in which he makes claims as a creditor in his mother's succession. The case has also been before this court previously on appeal. Succession of Steckler, 95-227 (La.App. 5th Cir. 11/28/95), 665 So.2d 561; Succession of Steckler, 617 So.2d 997 (La.App. 5th Cir.1993).
In the April 16, 1992 petition, plaintiff made the following claims against Mrs. Steckler's succession, claiming a total due him of "$199,800.29":[1]
1) Plaintiff makes a claim for "$80,466.83" in cash for certain unspecified property belonging to him over which Mrs. Steckler had the usufruct until her death.
2) Plaintiff makes a claim for "$43,624.01" in damages for Mrs. Steckler's alleged "neglect and intentional damage" to certain immovable property, subject to Mrs. Steckler's usufruct.
3) Plaintiff makes a claim for "$20,059.45" for movable property over which Mrs. Steckler had a usufruct.
4) Plaintiff makes a claim for "$54,000" for property of his (cash, stocks, bonds, and other marketable securities) which he alleges Mrs. Steckler "held".
5) Plaintiff makes a claim for "$1,493.30" for tools that were donated to him, but which remained in his mother's possession.
6) Plaintiff makes a claim for an undetermined amount due from rents collected *1069 from the immovable property after his mother's death.
The matter was tried on March 25, 1997 and judgment, with detailed reasons, was rendered on August 21, 1997. The court awarded plaintiff the sum of $45,351.50 as the value of his one-half interest in the consumable community assets of his father, which included $173 for inherited items from his father, less $4,068.50 which plaintiff owed the estate of Mrs. Steckler for repairs, maintenance, insurance and taxes on the immovable property which he owned with the succession. Plaintiff's other claims were denied. It is from this judgment that plaintiff appeals.
On appeal, plaintiff assigns eleven errors which can be grouped into three main arguments: (1) he contends that the trial court erred in reducing his claim because of debts of his father's succession that were paid by his mother; (2) he contends that the trial court erred in assessing the condition and care of and expenses for the immovables of his father's succession; and (3) he contends that the trial court erred in its determination of what movables belonged to plaintiff and assessing a value for those movables.
Plaintiff's first argument concerns the valuation of his one half interest in the movable community property from his father's succession, of which he was given the naked ownership and his mother the usufruct. After valuing the property at $162,742.65, the community debts of $31,919.91 were deducted, consisting of miscellaneous debts ($565.33), taxes and insurance $3,783.24 and expenses of last illness ($27,571.34). It was thus determined that plaintiff's one-half of the assets was valued at $65,411.37. From that was deducted $20,059.87 of separate debts, consisting of funeral costs ($1,947.04), court costs and legal fees ($8,616.03), inheritance taxes ($896.80) and estate taxes ($8600). It is with these deductions that plaintiff takes issue.
Plaintiff contends that the right of Mrs. Steckler's succession to claim these deductions has prescribed. Plaintiff contends that the action to recover any sums paid by her which were debts of her husband's succession was personal to her and has prescribed, under La. C.C. art. 3499, ten years from the closing of her husband's succession. We disagree.
Contrary to plaintiff's argument, La. C.C. art. 592 expressly addresses the situation where a usufructuary pays the debts of the succession and states that "[w]hen the usufructuary advances funds needed for the discharge of the debts of the succession, he shall be reimbursed without interest at the end of the usufruct."[2] Accordingly, we find that the right of Mrs. Steckler, as the usufructuary, to be reimbursed for the funds she advanced to pay the debts of her husband's succession commenced "at the end of the usufruct" and has not prescribed.
Next, plaintiff argues that the trial court erred in deducting from the value of the movables the sum representing the expenses of his father's last illness ($27,571.34). Plaintiff contends that the expenses of the last illness were covered by insurance payments and were not paid by Mrs. Steckler.
The Executor of Mrs. Steckler's estate argues to the contrary that the trial court correctly assessed the sum as a debt of Lester R. Steckler's succession for which, as sole heir, plaintiff was liable. The Executor points out that plaintiff offered and presented no evidence of medical insurance policies covering this amount, nor did he have evidence of payments of these debts by insurance. The Executor argues further that resolution of this issue involves a question of fact and credibility, which the trial court correctly made against plaintiff and which should not be overturned absent a finding of manifest error.
At the outset we point out, and it is well settled, that on appellate review of a factual determination, the reviewing court may not set aside the trial judge's findings of *1070 fact in the absence of manifest error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973). When findings are based on determinations regarding the credibility of witnesses, the manifest error (clearly wrong) standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La. 1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
The trial judge made a factual finding that Mrs. Steckler "advanced funds in order to discharge debts of the succession of Lester R. Steckler." The trial court further found that "plaintiff produced no credible evidence upon which to base his claim that the debts submitted by the Succession of Lester R. Steckler to the State and Federal Governments were inaccurate. The Court finds that plaintiff offered no admissible evidence to support his contention that the debts of Lester R. Steckler's succession were paid by insurance, and not by the Decedent, Mrs. Steckler."
We find no merit in plaintiff's argument herein that these findings by the trial court were clearly wrong or manifestly erroneous. To the contrary, the trial court's findings are well supported by the record. The records from the succession of Lester R. Steckler, prepared at the direction of plaintiff and signed by him as executor of that estate, provided that the expenses of the last illness were a debt of the succession. Had these expenses been covered and paid by insurance, it would have been improper to so list them in the succession records and tax forms. Furthermore, plaintiff produced no medical insurance policies or payments therefrom covering the expenses of Lester Steckler's last illness. Therefore, we find no error in this finding by the trial court.
Plaintiff complains about the amount charged against him for property taxes paid by the Executor of Mrs. Steckler's estate on property which he inherited from his father as naked owner. He contends that he was overcharged because some of the taxes listed by the Executor were taxes paid for a period prior to Mrs. Steckler's death.
We find no merit in plaintiff's argument on this point. In the trial court's reasons for judgment, the trial court clearly explains that it considered plaintiff's argument and agreed with it. The trial court, in referring to the Executor's accounting noted that "this accounting (Exhibit D-16) includes certain charges paid by the Succession which should not be charged to Plaintiff, i.e. pre-death taxes for 1990 and 1991...." The trial court thereafter made the appropriate reduction in these figures. We find no error in the ruling in this regard.
Plaintiff argues that the trial court erred in allowing a charge against him for insurance coverage on the immovable property which he inherited from his father subject to his mother's usufruct. He contends that the property should not have been insured and, therefore, he should not be charged for the premiums.
The Executor is charged with the duty to "preserve, repair, maintain, and protect the property of the succession." La. C.C.P. art. 3221. Further, "[h]e shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act." La. C.C.P. art. 3191. The Executor, seeking to protect the property maintained insurance on the property during the administration of the succession. Plaintiff has made no plausible *1071 showing that this expense was inappropriate under the circumstances.
Plaintiff makes similar claims regarding expenses for water service and lawn maintenance. The trial court noted in its reasons for judgement that "these costs were necessary and reasonable expenses incurred by the Succession as co-owner. Although plaintiff contends that the Executor should not have paid for insurance and water service on the properties, the Court finds that such expenses were necessary and reasonable." We find no manifest error in this ruling by the trial court.
Plaintiff contends that the Executor breached his duty to the succession because he failed to maintain, rent or sell the immovable properties inherited by plaintiff from his father's succession as naked owner. More specifically, plaintiff claims that his mother damaged the properties during her usufruct and that the executor breached his duty to maintain the properties during the administration of the succession.
This issue was thoroughly addressed by the trial judge in his reasons for judgment, with which we agree. The trial court stated:
As usufructuary during the period 1971 to 1991, the Decedent was responsible for ordinary maintenance and repairs of these properties. La. Civ.Code art. 577. As naked owner, plaintiff, Donaldson Steckler, was responsible for extraordinary repairs such as roof replacement. La. Civ.Code art. 578; Succession of Crain, 450 So.2d 1374, 1376 (La.App. 1st Cir.1984). Immediately on Mrs. Steckler's death in 1991, the usufruct terminated. From that point on, the obligations between the Estate and plaintiff were merely those of co-owners in indivision.
The Court finds that plaintiff is not entitled to recovery of any sums for any repairs to the properties. In 1992, approximately one year after Mrs. Steckler's death, the Executor performed repairs to the properties, including roof repair. Mr. Brignac, the executor, testified that the Estate hired Ferran Construction to repair the roof at 743 West William David and to perform other necessary repairs. See: Defendant's Exhibits D-12 and D-13. Mr. Brignac also hired Ferran Construction to do minor repairs on the 301 Papworth property. See: Exhibit D-14. The Court finds that these repairs satisfied the usufructuary's duty to perform ordinary repairs on the three properties.
The Court further finds that the Executor fulfilled his duty to the Succession and acted reasonably in his administration of the properties belonging to the Succession. The rights and obligations of co-owners such as the Succession and plaintiff are governed by La. Civ.Code arts. 797-818. After the Decedent's death, the Succession, as a co-owner with plaintiff, had no obligation to repair or maintain the properties. A co-owner may, but is not obligated to take necessary steps for the preservation of the property held in indivision without the concurrence of the other co-owner. La. Civ.Code art. 800.
A co-owner is liable to his co-owner for any damage caused by his fault. La. Civ. Code art. 799. Mr. Brignac, the executor, testified that the date of Mrs. Steckler's death in 1991 through the date of trial in 1997, plaintiff refused to agree to repair, sell or rent the properties. In fact, plaintiff sought an injunction to prevent the executor from repairing the property. See: Defendant's Exhibit D-1. Furthermore, the Court finds that plaintiff did not meet his burden of proof to demonstrate that the Executor was responsible for any of the repairs allegedly needed by the properties. Therefore, the Court finds that the Succession fulfilled all of its responsibilities and owes plaintiff no damages regarding the immovable properties.
Finally, plaintiff contends that the trial court erred in its award to plaintiff for the value of the movables over which Mrs. Steckler had a usufruct and other movables which were allegedly donated to plaintiff but left in Mrs. Steckler's care.
The trial court found plaintiff's evidence concerning any donated items seriously lacking and his testimony concerning them "unpersuasive." Furthermore, even if accepted as true, the evidence did not establish the formalities for a valid donation. Therefore, *1072 we find that plaintiff has not established that the trial court was manifestly erroneous in this factual finding, credibility determination and legal conclusion regarding any property plaintiff alleges was donated to him but left in his mother's control.
In determining what movables plaintiff inherited from his father and their value, the trial court used the descriptive list filed by plaintiff as Executor in his father's succession. Plaintiff argues herein that some items were not on the descriptive list and that the values were not accurate.[3]
The descriptive list in a succession is accepted as prima facie proof of all matters shown therein, unless amended or traversed successfully. La. C.C.P. art. 3137. The trial court again made a credibility call and found plaintiff's proof lacking concerning any items that were allegedly not on the descriptive list filed in his father's succession. Moreover, the items specified by plaintiff, a dishwasher, a garbage disposal, a washing machine, a clothes dryer and a hot water heater, obviously were items which, after over twenty years of normal use, were worn out and either discarded or replaced. Therefore, we find that the trial court ruling was supported by the record and there was no error in the trial court's determination and calculation of what movables were inherited by plaintiff from his father and what value he was due for those movables some twenty years later.
Accordingly, for the reasons stated above, the judgment of the trial court is affirmed. Costs of appeal are assessed against plaintiff.
AFFIRMED.
NOTES
[1] Plaintiff claimed in his petition the total amount of $199,800.29. However, we note that the itemized amounts only equal $199,643.59.
[2] La. C.C. art. 592 was enacted by Act No. 103 of 1976, subsequent to the closing of Lester R. Steckler's succession. However, as noted in the comments thereto, the provision combined the concepts expressed in Articles 585 and 587 or the 1870 Civil Code and did not change the law.
[3] The trial court noted the duplicities in plaintiff's arguments when he argues that certain documents are correct in one context and incorrect in another depending on the benefit to plaintiff. Similarly, in prior arguments, plaintiff argues that the Executor should not have spent money on maintenance of the immovables but also argues that he is due damages for the disrepair of the immovables.